D. D. DEES, Jr. and Muriel S. Dees, Plaintiffs,

v.

ESCAMBIA CHEMICAL CORPORATION, Defendant.

Civ. A. No. 4584-67.

United States District Court, S. D. Alabama, S. D.

April 17, 1970.

Bert S. Nettles, Mobile, Ala., for plaintiffs.

Broox G. Holmes, Mobile, Ala., Mooneyham & Mooneyham, Montgomery, Ala., for defendant.

## OPINION AND JUDGMENT

PITTMAN, District Judge.

The defendant, Escambia, sold and delivered certain fertilizers and chemicals to the plaintiff, Dees, for use on his farm. These transactions took place prior to June 28, 1965. On that date, Dees executed a promissory note, in favor of Escambia, in the amount of $15,850.94. The note was recorded in the Mortgage Book in Probate Judge's Office, Monroe County, Alabama, on July 19, 1965. At some time prior to recordation, at the top of the note, the words "This note secured by 50 acres cotton, 250 corn, plus 100 acres soybeans" were added. All of this having transpired prior to the end of 1965, the Uniform Commercial Code cannot apply.

■ The parties have agreed that a judgment may be entered solely upon the court's ruling as to the materiality of this added language as an alteration of the promissory note. It is well settled in Alabama that materiality is a question of law. Brown v. Johnson, 127 Ala. 292, 28 So. 579 (1900); Payne v. Long, 121 Ala. 385, 25 So. 780 (1899).

The plaintiff in the case sub judice brought an action for slander of title to crops, arguing that the marginal notation on the note by the defendant created a crop mortgage. The defendant insists that the notation was merely a business memorandum, and not an alteration of the promissory note. The defendant has entered a counterclaim on the note, and upon the open account.

In 1965 the statute applicable to materiality of alterations of negotiable instruments was Title 39, Section 121, Code of Alabama 1940 (Recomp.1958).

§ 121 Alterations which are material —Any alteration which changes:
(1) The date.
(2) The sum payable, either for principal or interest.
(3) Time or place of payment.
(4) The number or *relations of the parties.*
(5) The medium or · currency in which payment is to be made.

Or which adds a place of payment where no place of payment is specified, *or any other change or addition which alters the effect of the instrument in any respect, is a material alteration.* (Emphasis added.)

It appears that the facts before us are governed by the "catch-all" phrase " * * * or any other change or addition * * * ", and by any but the narrowest readings of subsection (4) pertaining to the number or *relations of the parties.*

The Alabama Supreme Court has used two basic tests of materiality. First, in Montgomery Railroad Co. v. Hurst, 9 Ala. 513, (1846), the Court asked whether the addition of the words changed or increased the responsibilities of the parties.

In Montgomery v. Crossthwait, 90 Ala. 553, 8 So. 498 (1890), M maker asked E endorser to endorse M's note to P payee. E complied, but P would not accept the note unless M added the name of his firm. M did so without authority, and without E's knowledge. P sued E on the endorsement. The Court broadened the application of the test "whether the interposed matter made the instrument speak a language different in legal effect from

that which it originally spoke, which carries with it some change in the rights, interests, or obligations of the parties," and held the note was vitiated by the alteration even though the alteration was ineffectual.

In Payne v. Long, supra, (1899), the payee crossed out a provision for "a settlement between us" as to the amount of land covered by a certain deed. The Court held the note whereon the stricken provision had appeared was voided.

In Benton v. Clemmons, 157 Ala. 658, 47 So. 582 (1908), the true test of materiality was held to be: "Did the interposed matter make the 'instrument speak a language different in legal effect * * * which carries with it some change in the rights, interests, or obligations of the parties?'" The Court held that a clarification of the description of a mule covered by a chattel mortgage is not a material alteration under the above test which would void the instrument.

In Benton v. Clemmons, supra, and again in Nance v. Gray, 143 Ala. 234, 38 So. 916 at 918 (1905), the Court cautions that language which supplies nothing that would not be intended by law without it, or operates to perfect an instrument otherwise invalid, (a description of land in a note merely to identify the land and note was just as strong without the description) the alteration is not considered material.

Consequently, in applying the statute, we should establish the rights and responsibilities of the parties under the original tenor of the instrument in question—here, a promissory note. Next we should consider the areas in which these rights and responsibilities may have been expanded or diminished by alteration, or attempted alteration, of the note to create or attempt to create, a crop mortgage or security lien. The act of recording the altered instrument should also be considered since it appears to have risen from the nature of the alteration itself.

 As a holder of the promissory note, the defendant held a written promise that the plaintiff would pay a sum certain. Whether or not the defendant is a holder in due course by virtue of his status as payee, or by his unauthorized alteration, the defendant may be said to have been a general, unsecured creditor of the plaintiff. As such, the defendant was subordinate to secured creditors both in the event of non-payment, and, more importantly, in the event the debtor should become insolvent. The language of the marginal note, and the recordation in the Mortgage Book suggest an intention on the part of the defendant to elevate itself to the status of a secured creditor—either mortgagee or lienor. However, if as defendant contends, the notation was but a memorandum of the actual understanding of both parties, and the notation was correct, the note is not vitiated. E. E. Yarbrough Turpentine Co. v. Taylor, 198 Ala. 202, 73 So. 458 (1916). If the notation was incorrect, even though shown to have been made in good faith, such a notation will vitiate the note. Green v. Snead, 101 Ala. 205, 13 So. 277 (1893). In either event, the defendant in the case sub judice would have the burden of proving that the notation did, in fact, conform to the understanding of the parties. Whitewater Lumber Co. v. Langford, 216 Ala. 510, 113 So. 525 (1927).

 The defendant argues in its brief that the notation is not sufficient to create a mortgage in its form and because of its sketchy description of the property. While courts have held that the best way to describe crops mortgaged is to describe the land upon which they are growing, this has not been considered essential in the Alabama cases. Moreover, there is a trend in the modern decisions away from the stringent exactitude once required in chattel mortgages. Secondly, the defendant is silent on the question of a lien, or security interest as they are currently known, being created by the notation on the margin. As we have seen previously, this would affect the responsibilities of the parties. Finally, the Court in setting forth the test

of materiality in Montgomery v. Crossthwait, supra, states * * * any material alteration * * * whether injurious or not, avoids the contract. * * * "

In the event the defendant failed to expand his own rights as a matter of law, by altering and recording the instrument, he has diminished the corresponding rights of the plaintiff, most specifically the unencumbered enjoyment of his crops according to the original tenor of the unsecured promissory note.

■■ This court holds that the notation on the promissory note in the case sub judice without question affects the obligations of the payor. The alteration made is material under the above cited authorities together with the rule of Layfield v. Lewis, 268 Ala. 666, 109 So. 2d 838 (1958), the latest Alabama case we find on alteration of instruments. *Layfield,* which was concerned with the alteration of the interest rate on a note, holds in accord with the majority view in the United States that a fraudulent material alteration will vitiate both the note and the underlying obligation. A non-fraudulent material alteration will vitiate the note only, allowing recovery on the underlying obligation. 127 A.L.R. 343, 345, citing Green v. Snead, supra; 3 C.J.S. Alteration of Instruments §§ 5, 10, and 11, pp. 907, 915, 916.

### JUDGMENT

In accordance with the above holdings, and the stipulation heretofore filed in this cause, a judgment is hereby entered releasing and discharging the plaintiff, Muriel S. Dees, from this suit, and a judgment for defendant is hereby rendered against the plaintiff, D. D. Dees, Jr., in the amount of $24,667.30, which includes $4,087.04 attorney fees on counterclaim #1 of the defendant as it relates to the note and a judgment for defendant and against the plaintiff for $6,306.76 on counterclaim #2 as it relates to the open account.

The costs are hereby taxed against the plaintiff, D. D. Dees, Jr.